UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DAVID A. CLARKE, JR., | |
| Plaintiff, | Case No. 16-CV-208-JPS |
| v. | |
| CHRIS ABELE, | |
| Defendant. | ORDER |

Political disputes are as old as government itself. *See, e.g.*, *Marbury v. Madison*, 5 U.S. 137, 143, 2 L. Ed. 60 (1803). This matter presents an exemplar case.

On January 28, 2016, Milwaukee County Sheriff David Clarke ("Clarke") filed this suit under 18 U.S.C. § 1983 against Milwaukee County Executive Chris Abele ("Abele") in Milwaukee County Circuit Court claiming that Abele committed unlawful retaliation under the First Amendment during the county's 2016 budget process. (Docket #1). Clarke sought "a judgment enjoining Executive Abele from using the County annual budget process to retaliate against County elected officials for speaking out on matters of public concern in violation of their First Amendment rights." (Docket #1 at 7).

Pursuant to 28 U.S.C. §§ 1331, 1441(a) & (b), and 1446, Abele removed the action to federal court. (Docket #1). Abele has likewise filed a motion to dismiss Clarke's claim for injunctive relief pursuant to Federal Rule of Civil Procedure 12(b). (Docket #2). That motion is now fully briefed and ripe for adjudication. (Docket #3, #9, #10).

For the reasons described herein, the Court will grant Abele's motion to dismiss this case. (Docket #2). Judgment will be entered accordingly.

1. BACKGROUND

Clarke's complaint arises out of certain events that occurred during Milwaukee County's 2016 budget approval process. (*See generally* Docket #1). In relevant part, Clarke had initially requested $109,221,269.00 for the Office of Sheriff for the 2016 fiscal year. (Docket #1 ¶ 9). Abele, however, submitted his recommended annual budget to the County Board of Supervisors ("the Board"), which included an allocation of $81,709,092.00 for Clarke's office. (Docket #1 ¶ 10). When the Board received Abele's proposal, it instead adopted an amendment which provided an additional $4,000,000.00 to the Office of the Sheriff. (Docket #1 ¶ 11).

On November 17, 2015, Abele exercised his statutory prerogative under Wis. Stat. § 59.17(5)-(6) and vetoed the Board's $4,000,000.00 amendment. (Docket #1 ¶ 12). When Abele issued his decision, however, he explained the reason for his veto to the Board in the form of a memorandum. (Docket #1 ¶ 15). As quoted in relevant part in Clarke's complaint, Abele stated that he was "vetoing this amendment because" he did not want to "raise property taxes by 1.4 percent to validate [Clarke] for his repeated incendiary comments and his out of touch views on criminal justice and our society." (Docket #1 ¶ 15). Abele expressed his view that "[p]ublic insults and accusations don't make us safer. As public servants, our responsibility is not to make headlines, our responsibility is to make a difference." (Docket #1 ¶ 15). He also went on to identify specific examples of Clarke's "incendiary" comments, including Clarke calling "Black Lives Matter" protesters "sub-human creeps" and accusing African Americans of being uneducated, lazy, and morally bankrupt. (Docket #1 ¶ 15).

Thereafter, on November 18, 2015, the Board overrode Abele's veto. (Docket #1 ¶ 13). Clarke's office was allocated and received the additional $4,000,000.00 in its 2016 budget. (Docket #1 ¶ 13).

2.  LEGAL STANDARD

"A motion to dismiss pursuant to [Rule] 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). "To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state enough facts that, when accepted as true, 'state a claim for relief that is plausible on its face.'" *Spierer v. Rossman*, 798 F.3d 502, 510 (7th Cir. 2015) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). The Court must "tak[e] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiffs." *Pugh v. Tribune Co.*, 521 F.3d 686, 692 (7th Cir. 2008).

Similarly, "[m]otions to dismiss under Rule 12(b)(1) are meant to test the sufficiency of the complaint, not to decide the merits of the case." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014) (citing *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996)); *see also Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (applying the same principle to motions under Rule 12(b)(6)). As when deciding a Rule 12(b)(6) motion, "[i]n the context of a motion to dismiss for lack of subject matter jurisdiction, [the Court must] accept as true the well pleaded factual allegations, drawing all reasonable inferences in favor of the plaintiff." *Iddir v. INS*, 301 F.3d 492, 496 (7th Cir. 2002). However, "a plaintiff faced with a

12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." *See Burwell*, 770 F.3d at 588-89 (citing *Kontos v. U.S. Dep't Labor*, 826 F.2d 573, 576 (7th Cir. 1987)).

3. ANALYSIS

Clarke filed this action pursuant to 42 U.S.C. § 1983 to enjoin Abele from using the Milwaukee County's annual budget process to retaliate against elected officials. (Docket #1 ¶ 7). Clarke asserts that he—and presumably other elected officials—will file proposed budgets in the future and will be deterred from future speech by the threat of rebuke from Abele. (Docket #1 ¶¶ 32-33).

Citing four separate grounds, Abele argues that dismissal of Clarke's complaint is proper. Specifically, he argues that: (1) to the extent Clarke is suing Abele in Abele's individual capacity, Abele is entitled to legislative immunity; (2) to the extent Clarke is suing Abele is his official capacity, neither Clarke nor Abele are suable entities for the purpose of a Section 1983 action; (3) that, in any case, Clarke lacks Article III standing to bring this action; and (4) Clarke's allegations substantively fail to satisfy the elements of a First Amendment claim. (Docket #3). The Court will address each argument in turn.

3.1 Legislative Immunity

"The principle that legislators are absolutely immune from liability for their legislative activities has long been recognized in Anglo-America law." *Bogan v. Scott-Harris*, 523 U.S. 44, 48 (1998)). This rule of "absolute immunity" exists to advance the "public good" by ensuring that "the exercise of legislative discretion [is] not inhibited by judicial interference or distorted by the fear of personal injury." *Id.* at 54.

In light of this purpose, the Supreme Court has clarified that the "venerable tradition" of legislative immunity not only applies to federal legislators, but also protects state, local, and regional officials who are sued under Section 1983. *Id.* at 49 (explaining "that Congress did not intend the general language of § 1983 to 'impinge on a tradition so well grounded in history and reason.'") (internal citations omitted). Indeed, the Supreme court "ha[s] recognized that officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions.…" *Id.* at 55.

Thus, to determine whether the doctrine of legislative immunity applies to challenged conduct, courts apply a functional test. In other words, this Court must "first look[] at whether the acts were 'in form, quintessentially legislative.'" *Bagley v. Blagojevich*, 646 F.3d 378, 385 (7th Cir. 2011) (internal citations omitted). Under this inquiry, whether an action is legislative "in form" "turns on the nature of the act" and whether the act is an "integral step[] in the legislative process," rather than on "the motive or intent of the official performing it.'" *Id.* at 392; *accord Rateree v. Rockett*, 852 F.2d 946, 950 (7th Cir. 1988). For example, in *Bogan*, "[i]ntroducing, voting, and signing into law a budget were 'formally legislative' actions even though an executive official (the mayor) introduced and signed the budget." *Bagley*, 646 F.3d at 392 (citing *Bogan*, 523 U.S. at 55). Second, "though *Bogan* does not explicitly require an inquiry into the action's substance," courts may also "examine the action's substance because it [may] help illuminate what actions are included in the sphere of legitimate legislative activity." *Id.* (quoting *Bogan*, 523 U.S. at 56*; Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)).

In *Bagley*, 646 F.3d at 392-93, the Seventh Circuit provided guidance regarding the application of the legislative immunity form-and-substance test. On the one hand, "[t]o determine whether an act is legislative in form,

courts look at whether the defendants acted pursuant to constitutional or statutory procedures." *Bagley*, 646 F.3d at 392-93 ("Without a doubt, the act of vetoing a line item in a bill constitutes an 'integral' step in Illinois's 'legislative process.' Illinois's Constitution gives the state's governor authority to exercise a line-item veto over appropriation bills."); *see also State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 90–91 (2d Cir. 2007) (concluding that it was unclear whether the alleged actions were "integral steps in the statutory budget process"); *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 774 (3d Cir. 2000) ("In addition, the act must be 'procedurally' legislative, that is, passed by means of established legislative procedures.") (internal citations omitted). On the other hand, to determine the substantive character of the action, the Court should look "at the action's character to determine whether the action substantively 'bore all the hallmarks of traditional legislation.'" *Bagley*, 646 F.3d at 392-93 (citing *Bogan*, 523 U.S. at 55). In other words, an action will "qualif[y] as legislative in substance if it reflects 'a discretionary, policymaking decision implicating the budgetary priorities of the [government] and the services the [government] provides to its constituents.'" *Id.* (citing *Bogan*, 523 U.S. at 55).

  The Court concludes that Abele's veto of the Board's budget amendment is protected by absolute legislative immunity. First, with regard to whether Abele's veto was legislative "in form," both parties concede that Abele exercised his veto within the context of the county's standard budget protocols, a process which is strictly regulated by Wisconsin statute. (*See* Docket #1 ¶¶ 3-8); *see also* Wis. Stat. Ann. § 59.17(5) (West) ("The county executive…shall be responsible for the submission of the annual budget to the board and may exercise the power to veto any increases or decreases in the budget under sub. (6)."); Wis. Stat. Ann. § 59.17(6) (West) ("Every

Page 6 of 14

Case 2:16-cv-00208-JPS   Filed 04/21/16   Page 6 of 14   Document 11

resolution adopted or ordinance enacted by the board shall, before it becomes effective, be presented to the county executive. If the county executive approves, the county executive shall sign it; if not, the county executive shall return it with his or her objections, which objections shall be entered at large upon the journal and the board shall proceed to reconsider the matter."); Wis. Stat. Ann. § 59.60(5)-(7) (West) (outlining with specificity the time line and procedures by which: (1) department directors must submit budget recommendations to county executives; (2) county executives must hold public hearings and submit budget proposals to the county board; and (3) the county board, in connection with the finance committee, must review, publish, and approve the county executive's proposal). Abele's veto was undisputedly asserted pursuant to statutory authority. *See* Wis. Stat. Ann. §§ 59.17(5)-(6), 59.60(5)-(7) (West)*; Bagley*, 646 F.3d at 392-93.

Wisconsin statutes also makes clear that Abele's veto power is an "integral" step in the legislative process of developing the county budget. *See* Wis. Stat. Ann. §§ 59.17(5)-(6), 59.60 (5)-(7). Its manner of execution and role within the broader budget process development is dictated by Wisconsin statute. *Id.* In this sense, Abele's veto was, in all material respects, the same as the activity challenged in *Bogan*, wherein the Supreme Court expressly held that "[i]ntroducing, voting, and signing into law a budget were 'formally legislative' actions even though an executive official (the mayor) introduced and signed the budget." *Bagley*, 646 F.3d at 392 (citing *Bogan*, 523 U.S. at 55). Likewise, the Seventh Circuit in *Bagley* also concluded that, under *Bogan*, an executive's option to veto line items in a bill is an "integral step in the legislative process." *Id.* at 393 (relying also, in part, on the Seventh Circuit's previous conclusion that "legislative immunity attached to a county executive's role of 'transmitting a budget' from the department of public

Page 7 of 14

Case 2:16-cv-00208-JPS   Filed 04/21/16   Page 7 of 14   Document 11

works to the county board, which enacted the budget.…") (citing *Nisenbaum v. Milwaukee County*, 333 F.3d 804, 808 (7th Cir. 2003)).

In addition, Abele's veto was substantively legislative because it reflected Abele's "discretionary, policymaking decision" which, in turn, "'implicat[ed] the budgetary priorities of the [Milwaukee County government] and the services the [Milwaukee County government] provides to its constituents.'" *Id.* at 395 (citing *Bogan*, 523 U.S. at 55). The budget allocation decision, such as that which was embodied in Abele's veto, affected the county budget at large, and thus its "implications reach[ed] well beyond" Clarke. *Bogan*, 523 U.S. at 56. As in *Bagley*, Abele's motives, though frustrating for Clarke, do not weigh into the calculus of whether Abele's veto is protected by legislative immunity. *Bagley*, 646 F.3d at 394.

Clarke's arguments on this issue are both unclear and contradictory. (*See* Docket #9 at 14-21). On the one hand, Clarke implies that because he is suing Abele in his "official capacity," Abele cannot assert a personal immunity defense. (Docket #9 at 14) (citing *Owen v. City of Indep., Mo.*, 445 U.S. 622, 638 (1980)). He then, however, goes into an analysis of *Bagley* and *Bogan* and argues (without case citations) that Abele's role in the county budget process is administrative, rather than legislative. (Docket #9 at 16-17) ("A veto is not a legislative act. It is a quintessential act of an executive. The Veto was an executive act."). Clarke further argues that because he is suing on the basis of the veto alone, "[t]he legislative action of the Board overriding the Veto is immaterial." (Docket #9 at 17). He further posits—again without citation to binding or persuasive case law—that "[a]n action is not legislative if retaliation is totally unrelated to any legislative outcome." (Docket #9).

Page 8 of 14

Case 2:16-cv-00208-JPS   Filed 04/21/16   Page 8 of 14   Document 11

Clarke's reasoning is flawed for many reasons. First, Clarke's failure to clarify whether he is pursing his claim against Abele in an individual or official capacity forces the Court to consider whether—assuming Abele is being sued in his individual capacity—Clarke can maintain his claim in light of the doctrine of legislative immunity. Thus, despite Clarke's unclear maneuvering, the issue of whether Abele is entitled to absolute immunity is properly raised and will be decided by this Court. Second, Clarke's arguments ignore the nature of the legislative immunity inquiry as established by the Supreme Court and Seventh Circuit. *See Bogan*, 523 U.S. at 54-56; *Bagley*, 646 F.3d at 391-94. Both of these Courts have made abundantly clear that whether an action is subject to legislative immunity depends on the nature of the act itself—not whether the outcome of that action is somehow legislative or administrative in nature. Finally, the proposition that a veto in and of itself is administrative and removed from the realm of "legitimate legislative activity" is a proposition wholly unsupported by case law; the Supreme Court and Seventh Circuit have expressly ruled to the contrary. *See e.g.*, *Bogan*, 523 U.S. at 54-56; *Bagley*, 646 F.3d at 391-94.

Applying the proper test, the Court concludes that—to the extent Clarke is suing Abele in his individual capacity—Abele is entitled to legislative immunity. As Clarke appears to concede with respect to the Board, Abele's veto was legislative in form because passing the Milwaukee County budget is a statutorily regulated process in which the veto is indeed an "integral" step. Moreover, the veto was substantively legislative as it reflected Abele's discretionary policy decision over Milwaukee County's spending priorities. Thus, Clarke's claim against Abele as an individual must be dismissed because it fails to state a claim. *See* FED. R. CIV. P. 12(b)(6).

### 3.2 Official Capacity Claim

As highlighted above (*see supra*, Part 3.1), Clarke is not clear as to whether his suit is directed at Abele in a personal or official capacity. (*See* Docket #1, #8). However, even if Clarke is suing Abele in his official capacity, which would preclude Abele from asserting his legislative immunity defense, Clarke's official capacity claim is not cognizable under Section 1983.

"In order to maintain a § 1983 claim against the defendant[] in [his] official capacit[y]—in essence, to maintain a claim against the County itself—[the plaintiff] must demonstrate that the County's official policy or custom was the cause of his constitutional injury." *Holmes v. Sheahan*, 930 F.2d 1196, 1199 (7th Cir. 1991); (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978)); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law.") (internal citations omitted) (internal quotation marks omitted). "Unless there is an unconstitutional policy, there cannot be official-capacity liability; only individual-capacity liability is possible. The 'official policy' requirement for liability under § 1983 is to 'distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 514-15 (7th Cir. 2007) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).

Here, Clarke does not allege that a custom or policy in Milwaukee County has harmed him and entitles him to prospective relief. (Docket #1, #9). Instead, Clarke claims that during the 2016 budget process, he was harmed by Abele's assertion of a statutory veto right over the Board's

budget amendment. (Docket #1). Without any allegations related to a constitutionally infirm custom and/or policy, Clarke fails to allege sufficient facts to support an official capacity claim. *Holmes*, 930 F.2d at 1199. His action must, therefore, be dismissed under Rule 12(b)(6).[1] *See Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) ("A municipality only may be held liable under § 1983 for constitutional violations caused by the municipality itself through its own policy or custom.").

### 3.3 Article III Standing

Finally, Abele argues that Clarke's suit must be dismissed because the Court lacks Article III jurisdiction to hear Clarke's claim for prospective relief. Specifically, Abele argues that because Clarke has failed to allege any facts so as to suggest a fear of future harm, or of an ongoing, continuing constitutional violation, he cannot maintain his Section 1983 claim in federal court. (Docket #2 at 12-13). Clarke responds that this Court should maintain

---

[1] In addition, assuming Clarke brings this suit in his official capacity—which is unclear based on the face of the complaint and subsequent briefing—such a claim would, in essence, be a suit by Milwaukee County against itself, a wholly untenable result. *Cf. Buchanan v. City of Kenosha*, 57 F. Supp. 2d 675, 679 (E.D. Wis. 1999) (concluding that the Kenosha County District Attorney's Office was not a suable entity and thus "d[id] not have the authority to sue or to be sued"). Though Wisconsin statute does not address whether the sheriff has capacity to sue, *see* FED. R. CIV. P. 17(b)(3) ("The capacity to sue or be sued shall be determined by the law of the state in which the district court is held."), the Court finds no reason to depart from the well settled rule that the Milwaukee County sheriff, when named in a official capacity, is not a separate entity from the County. *See Brown v. Milwaukee Cty. Sheriff's Dep't*, No. 14-CV-1066-PP, 2015 WL 3946743, at *1 (E.D. Wis. June 26, 2015), *reconsideration denied sub nom. Brown v. Chybowski*, No. 14-CV-1066-PP, 2016 WL 53873 (E.D. Wis. Jan. 4, 2016) ("The Seventh Circuit Court of Appeals has held that a Wisconsin sheriffs department 'is not a legal entity separable from the county government which it serves and is therefore, not subject to suit.'") (citing *Whiting v. Marathon Cnty. Sheriff's Dep't.*, 382 F.3d 700, 704 (7th Cir. 2004)).

his suit because "Abele may again use the County annual budget process to retaliate against County elected officials for speaking out on matters of public concern in violation of their First Amendment rights." (Docket #9 at 28).

"Article III standing requires that a plaintiff [establish] three elements: (1) an 'injury in fact'—an invasion of a legally recognized interest which is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal link between that injury and the defendant's action, such that the injury is fairly traceable to the action complained of; and (3) that a favorable decision will likely redress the injury." *Sierakowski v. Ryan*, 223 F.3d 440, 442-43 (7th Cir. 2000) (citing *Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc.*, 528 U.S. 167, 180-81 (2000)). "[T]he Supreme Court has made clear that in order to invoke Article III jurisdiction a plaintiff in search of prospective equitable relief must show a significant likelihood and immediacy of sustaining some direct injury." *Id.*; *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 108 (1998) (stating that standing to request injunctive relief is lacking when only past harm is alleged); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects.")

The Court agrees that it lacks jurisdiction to hear Clarke's Section 1983 claim. Clarke's complaint is dedicated solely to outlining the purportedly unlawful retaliatory conduct that Abele exercised when vetoing the Board's budget amendment during the 2016 budget approval process. (Docket #1). Contrary to the blanket assertions in his complaint, Clarke pleads no *facts* that would suggest to the Court that he or any other public official are at risk of being subject to purportedly unlawful conduct again in the future. (*See* Docket #1 ¶ 33) ("County elected officials of ordinary firmness would be

deterred from future speech to bring about change with pubic ramifications extending beyond the personal by threat of punishment by Executive Abele suing the County annual budget process."). Clarke's "threadbare recital" of the elements of a cause of action for First Amendment retaliation is not sufficient to support constitutional standing for the purpose of injunctive relief. *See Tierney v. Advocate Health & Hosps. Corp.*, 797 F.3d 449, 452 (7th Cir. 2015) (internal citation omitted). Without any suggestion that there is a "significant likelihood and immediacy of sustaining some direct injury" from Abele, Clarke's claim must be dismissed for a lack of jurisdiction under Rule 12(b)(1).[2] *Sierakowski*, 223 F.3d at 442-43.

4.   CONCLUSION

In sum, the Court concludes that Abele's motion to dismiss this action should be granted. (Docket #2). First, Abele cannot be sued in an individual capacity on the grounds that he exercised he statutorily protected veto right because he is entitled to absolute legislative immunity. Second, Clarke fails to sufficiently plead that Milwaukee "County's official policy or custom was the cause of his constitutional injury," which is required for the purpose of a Section 1983 official capacity claim. *See Holmes*, 930 F.2d at 1199. Finally, as Clarke has failed to sufficiently plead a likelihood of future harm, he lacks Article III standing to litigate his claim for injunctive relief in federal court.

---

[2]In light of this Court's conclusion that: (1) to the extent Clarke alleges an individual capacity claim, Abele is shielded from suit under the doctrine of legislative immunity; (2) to the extent Clarke alleges an official capacity claim, Clarke fails to state a upon which relief may be granted; and (3) this Court lacks Article III jurisdiction to render a decision with respect to Clarke's claim for injunctive relief, the Court need not address Abele's remaining arguments with respect to whether Clarke's complaint satisfies the substantive elements of a First Amendment retaliation claim.

For the foregoing reasons, the Court will grant Abele's motion to dismiss this action in its entirety. (Docket #2).

Accordingly,

IT IS ORDERED that Defendant's motion to dismiss (Docket #2) be and the same is hereby GRANTED; this case be and the same is hereby DISMISSED.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 21th day of April, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge